IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02901-NRN

ANNE MARTHA ANDREW,

Plaintiff,

v.

ANDREW M. SAUL,[1] Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Anne Martha Andrew was not disabled for purposes of the Social Security Act for the period from October 20, 2013 through January 4, 2018, the date of the decision. (AR[2] 28.) Ms. Andrew has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #13.)

### Standard of Review

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##11, and 11-1 through 11-12.)

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

**Background**

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Ms. Andrew "has the following severe impairments: anxiety disorder and a substance addiction disorder." (AR 19.) The ALJ determined that Ms. Andrew had the following non-severe mental impairments: post-traumatic stress disorder ("PTSD"), borderline personality

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

2

disorder, panic disorder, and "reportedly dyslexia." (*Id.*) The ALJ considered any limitations associated with these impairments with respect to her anxiety disorder. (*Id.*) The ALJ determined that Ms. Andrew had the following non-severe physical impairments: chronic pain, particularly in the sacroiliac area, tendonitis hyperflexibility, and fibromyalgia. (*Id.*) Finally, the ALJ found that Ms. Andrew's weight loss related to her mental health conditions was a non-medically determinable impairment. (AR 20.)

The ALJ then determined at step three that Ms. Andrew "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 20-22) Because he concluded that Ms. Andrew did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Ms. Andrew has the following residual functional capacity ("RFC"):

> . . . the claimant [Ms. Andrew] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), specifically the claimant can lift and carry up to twenty pounds occasionally and ten pounds frequently, can stand or walk for six hours total, and can sit for six hours total in an eight-hour workday with normal breaks. The claimant can perform work that requires up to three months' time to learn techniques and acquire information for an average job performance. The claimant can frequently have contact with supervisors and coworkers. The claimant can occasionally have contact with the general public. The claimant can have no exposure to pulmonary irritants, industrial chemicals such as cleaners and glues. The claimant can have no exposure to loud noises, to unprotected heights, ladders, ropes, or scaffolds. The claimant would be expected to miss an average of one day of work per month to manage medical issues.

(AR 22.)

The ALJ concluded that Ms. Andrew had no past relevant work. (AR 27.) At step five, the ALJ found that, considering Ms. Andrew's age, education, work

3

experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including Office Helper and Garment Sorter. (AR 27-28.) Accordingly, Ms. Andrew was deemed not to have been under a disability from the alleged onset date of October 20, 2013, through January 4, 2018, the date of the decision. (AR 29.)

## Analysis

Ms. Andrew, proceeding pro se,[4] argues that the ALJ's decision should be reversed because he improperly weighed the medical opinion evidence and discounted her subjective complaints. The Court disagrees.

**Medical Opinion Evidence**

An ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The applicable regulations governing the consideration of medical opinions distinguish among "treating" physicians, "examining"

---

[4] The Court must construe liberally the filings of pro se litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c). Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). *See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) ("The treating physician's opinion is given particular weight because of his or her 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'").

The evaluation of a treating source's opinion is a two-step process. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* But good cause may exist for rejecting an opinion that is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Second,

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good

5

reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330. The factors the ALJ must consider are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

Here, the ALJ considered opinions from four sources: state agency psychiatrist Mark Dilger, M.D.; primary care physicians Terese Donch, D.O., and Katie Liu, M.D.; counselor Mary McClure; and, after the January 4, 2018 decision, Ms. Andrew submitted two documents from Allison Nitsch, M.D., dated January 29, 2018, and July 18, 2018, respectively. The Appeals Council determined that this additional evidence from Dr. Nitsch did not relate to the period at issue and therefore did not affect the ALJ's decision. The Court will address these opinions below.

**Ms. McClure**

The ALJ gave little weight to the opinions of Ms. McClure, a Licensed Clinical Social Worker (LCSW).[5] Ms. McClure provided two Mental Capacity Assessments. On June 9, 2017, Ms. McClure indicated that Ms. Andrew had no limitation in understanding, remembering, or applying information; moderate limitation in interacting with others and concentrating, persisting, or maintaining pace; and marked limitation in adapting. (AR 606-07.) She also stated that it is "unclear" whether Ms. Andrew's impairments would substantially interfere with her ability to work on a regular and sustained basis at least 20 percent of the time, and that she "cannot speak to" whether Ms. Andrew can work on a regular and sustained basis in light of her impairments. (AR 607.)

However, on July 20, 2017, Ms. McClure found that Ms. Andrew had moderate limitation in understanding, remembering, or applying information; marked limitation in interacting with others; extreme limitation in concentrating, persisting, or maintaining pace; and marked limitation in adapting. (AR 695-96.) She further opined that Ms. Andrew's impairments *would* substantially interfere with her ability to work on a regular and sustained basis at least 20 percent of the time, and that whether Ms. Andrew whether Ms. Andrew can work on a regular and sustained basis considering these impairments "depends on the work and the environment." (AR 696.)

---

[5] Although Ms. McClure was not an acceptable medical source under 20 C.F.R. § 404.1502(a), as an "other source" under the regulations, the ALJ was still required to consider her opinion "'to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.'" *Block v. Astrue*, 506 F. App'x 764, 770 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *2). It is undisputed that the ALJ did weigh Ms. McClure's opinions and explained why he discounted them.

When discussing this evidence, ALJ noted that Ms. McClure's two opinions that are inconsistent with each other despite being completed approximately one month apart, "which limits the likelihood that the claimants condition significantly deteriorated." (AR 26.) The Court cannot say that this observation is not supported by substantial evidence, especially because there is no explanation why Ms. McClure's assessment changed in such a short period of time. *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (ALJ properly disregarded medical opinion where the doctor did not explain the differences between assessments done one year apart). Moreover, the ALJ found that Ms. McClure's findings were inconsistent with the longitudinal treatment records, which "frequently noted improvement in symptoms, a bright of pleasant mood, and positive or upbeat affect." (AR 26.) As noted above, consistency between the medical opinion and the record as a whole is a proper factor for the ALJ to consider. *See* 20 C.F.R. § 404.1527(c)(4). In sum, the ALJ articulated adequate reasons for giving Ms. McClure's medical opinions little weight.

**Dr. Donch and Dr. Liu**

In contrast to Ms. McClure, Dr. Donch and Dr. Liu were treating physicians whose opinions were entitled to deference. However, the ALJ provided reasons, tied to the relevant factors, for assigning their opinions little weight.

Turning first to Dr. Donch, she wrote a note on February 12, 2014, which stated that Ms. Andrew "is suffering from extreme anxiety and depression arising from a recent traumatic event and as a result she has been unable to work from 12/8/2013 through 2/12/2014." (AR 404.) She wrote another note on May 9,

2014, indicating that Ms. Andrew could not work more than seven hours per week through that date. (AR 354.) The ALJ found that "these opinions appear limited to only the short periods identified and related to the traumatic event of 2013, which limits their probative value for assessing" Ms. Andrew's RFC. (AR 26.) This finding is supported by substantial evidence, and the probative value is further reduced because, as the Commissioner notes, a disabling impairment is one that prevents substantial gainful activity for 12 consecutive months, *see* 20 C.F.R. § 404.1509, and Dr. Donch does not opine that Ms. Andrew's impairment meets this duration requirement. Moreover, the ALJ points to medical records that show that Ms. Andrew "repeatedly reported improvements in her mental health conditions," which would be inconsistent with permanent work restrictions. (AR 26-27.) Thus, assigning Dr. Donch's opinion little weight was not a reversible error.

The ALJ also gave Dr. Liu's opinion little weight. The ALJ recognized that "[s]emi-annually since 2015, Dr. Liu has completed a Colorado Department of Human Services Med-9 Form, in which she opined that [Ms. Andrew] did not have a permanent and total disability but that a physical or mental impairment substantially precludes [Ms. Andrew] from engaging in her usual occupation for six months." (AR 26 (citing AR 689-94).) However, the ALJ found Dr. Liu's opinion, such as it was, to be "extremely vague in that it just identifies the claimant as having physical or mental impairment." (*Id.*)

The Court finds that Dr. Liu's "opinion," as contained in the Med-9 forms, was not entitled to anything more than minimal weight. A "Med-9 form is not a

9

true medical opinion because it does not contain judgments about the nature and severity of plaintiff's physical limitations, or any information about the activities plaintiff could perform." *Zacevich v. Astrue*, No. 10-cv-02165-PAB, 2011 WL 4536989, at *5 (D. Colo. Sept. 29, 2011). *See also Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (labelling the Med-9 Form a "conclusory form, which lack[s] any functional findings" and holding that the ALJ properly gave it no weight). Moreover, although the Tenth Circuit has refused to find categorically that Med–9 Forms are entitled to no weight, *see Andersen v. Astrue*, 319 F. App'x 712, 723–25 (10th Cir. 2009), the ALJ also noted that the restriction from returning Ms. Andrew to her usual occupation (marijuana trimmer) is a different standard than that used by the Social Security Administration. (AR 26.) In any event, this opinion is not inconsistent with the ALJ's findings because Dr. Liu does not claim that Ms. Andrew could not perform the jobs identified by the ALJ: Office Helper and Garment Sorter. (AR 28.) Thus, the ALJ did not err in only giving little weight to Dr. Liu's medical opinion.

**Dr. Dilger**

The ALJ afforded great weight to the assessment of the state agency psychiatrist, Dr. Dilger. (AR 26.) In January 2016, Dr. Dilger reviewed Ms. Andrew's treatment records. (AR 100-13.) He found that Ms. Andrew had severe impairments of anxiety and substance addiction disorder. (AR 105.) Dr. Dilger determined that Ms. Andrew had no restrictions in activities of daily living, and no repeated episodes of decompensation. (*Id.*) Ms. Andrew did have moderate difficulties in maintaining social functioning and maintaining concentration,

persistence, or pace. Specifically, she had moderate limitations in her ability to concentrate, work in proximity to others without being distracted, and interact with public and her superiors. (AR 108-09.) He concluded that Ms. Andrew "appears limited to performing and persisting at tasks that can be learned in up to three months on the job with reduced public contact within physical limitations." (AR 110.) Although these opinions were provided under outdated guidelines, the ALJ found that they were consistent with Ms. Andrew's reported activities and work activity. (AR 26.)

An ALJ is free to assign more weight to the opinion of a non-examining physician so long he provides a "legally sufficient explanation for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) The ALJ's reason for giving Dr. Dilger's opinion more weight—that it was more consistent with the record as a whole—is a legitimate basis for determining the weight to be afforded an opinion. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."). The ALJ cited specific documents in the record that supported this contention. For example, in November 2014, Ms. Andrew informed a therapist that she worked blowing glass and trimming marijuana. (AR 340.) In 2015, therapy notes indicate that she was improving and experiencing significant progress utilizing Eye Movement Desensitization and Reprocessing ("EMDR"). (AR 439-506.) Treatment notes from 2016 likewise show "ongoing improvements in mood, anxiety and functioning," and in November 2016, she reported that she was "feeling better

than ever." (AR 567.) Considering the record as a whole, assigning great weight to Dr. Dilger's medical opinion is supported by substantial evidence.

### Dr. Nitsch

Dr. Nitsch filled out a Med-9 form on January 29, 2018, weeks after the ALJ issued his decision. She marked the box that stated that Ms. Andrew had mental impairments that resulted in marked limitations in at least two of the "paragraph B" criteria of listing 12.06 ("Anxiety and Obsessive-Compulsive Disorders"). (AR 11.) On July 18, 2018, Dr. Nitsch completed a form certifying that Ms. Andrew has severe impairments of PTSD, anxiety, and panic attacks, which markedly limit her ability to meet new people and adapt or manage herself, and extremely limit her ability to concentrate. (AR 12.)

In denying Ms. Andrew's request for review of the ALJ's denial of disability benefits, the Appeals Council stated that the additional evidence did not relate to the period at issue and therefore did not affect the ALJ's decision. (AR 2.) Ms. Andrew argues that Dr. Nitsch's medical opinions conclusively establish her disability.

The Med-9 form completed by Dr. Nitsch in January 2018 is conclusory. The July 18, 2018 certification requires closer attention. First, the ALJ obviously did not assign Dr. Nitsch's opinion any weight because he did not have it before him when he made his decision. However, this cannot be considered a reversible error. *See Vallejo v. Comm'r, SSA*, 762 F. App'x 532, 535 (10th Cir. 2019) ("*Vallejo II*") ("The ALJ can hardly be faulted for failing to weigh evidence that did not exist when she issued her decision."). Moreover, the Appeals Council, when

denying review of an ALJ decision, is not required to expressly analyze new evidence when it denies review; "[r]ather, the Appeals Council is required only to 'consider' the new evidence—and a conclusory statement that it has done so is sufficient." *Vallejo v. Berryhill*, 849 F.3d 951, 953 (10th Cir. 2017) ("*Vallejo I*"). Accordingly, the Appeals Council did all it was required to do under the regulations.

But because the July 18, 2018 certification was accepted into the record, the Court must still consider whether the ALJ's decision is supported by substantial evidence in the record as a whole, including Dr. Nitsch's opinion. *See Vallejo I*, 849 F.3d at 956. "'Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing.'" *Vallejo II*, 762 F. App'x at 535. (quoting *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)).

Here, the Court finds that the ALJ's determination that Ms. Andrew was not under a disability for the period between October 20, 2013, and January 4, 2018, is supported by substantial evidence, even taking into account Dr. Nitsch's opinion. First, the certification was authored in July 2018, seven months after the ALJ's decision. Although Dr. Nitsch states that Ms. Andrew "has been seeing a therapist weekly since 6/9/2014," Dr. Nitsch does not opine that Ms. Andrew was in fact disabled prior to January 4, 2018. Moreover, Dr. Nitsch states that "therapist rates patient's impairment to be moderate to extreme per review" and that "patient not much improved." The former is not a medical opinion but a recitation of Ms. Andrew's therapist's rating. *See* 20 C.F.R. § 404.1527(a)(1)

("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). The latter is inconsistent with Ms. Andrew's treatment notes, which, as the ALJ states in his decision, show that she "has consistently reported improvement in her symptoms with therapy, including doing well, increased productivity, and better coping skills." (AR 25) Dr. Nitsch's opinion regarding Ms. Andrew's limitations are also contradicted by evidence in the record, cited by the ALJ and discussed above, including Ms. Andrew's work and life activities and her treatment records, "which frequently noted improvement in symptoms, a bright or pleasant mood, and a positive or upbeat affect." (AR 26.)

All told, while the Court may have weighed the evidence differently and perhaps come to a different conclusion, it cannot say, even considering the post-decision evidence, that the ALJ's decision was not supported by adequate evidence in the record.

**Ms. Andrew's Subjective Complaints**

Finally, the Court must address the ALJ's determination that Ms. Andrew's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 24-25.)

In general, "credibility determinations 'are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence.'"

14

*White*, 287 at 909 (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ expressly links his credibility assessment to specific evidence in the record, his conclusion should not be disturbed. *Id.* at 910. *See also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ did so here. First, as discussed throughout this Order, the ALJ considered Ms. Andrew's treatment history and found that the records demonstrated a relatively effective course of treatment and an improvement in her symptoms. The ALJ further noted that

> mental health examinations have confirmed a normal or anxious mood, a well-groomed appearance, a cooperative attitude, normal psychomotor activity, an appropriate affect, normal speech, logical, goal-directed thought processes, no delusions or hallucination, normal cognition, full consciousness, orientation, intact memory, average intelligence, intact judgment and insight, no suicidal ideation, intact attention and concentration, and intact executive functions.

(AR 25.)

The ALJ also remarked that Ms. Andrew had "refused medications or chose to smoke marijuana instead of being prescribed medication." (AR 25.) This is borne out in the record. (*See* AR 411 ("Refuses meds as they do not work with her body."); AR 389 (doctor "suggested the possibility that the [marijuana] could be contributing to her anxiety and [Ms. Andrew] stated that the marijuana helps her anxiety as long as long as she uses specific strains," and "med team would likely not prescribe to her based on her heavy [marijuana] use"); AR 381 ("[s]he presently does not want to try any other psychiatric medication, as she does not thing that they will be helpful," and "she has no desire to stop smoking marijuana and feels that it is helpful in controlling her anxiety").)

15

Finally, the ALJ listed some of Ms. Andrew's activities of daily living:

> [S]he helps care for her three step-children, cares for three cats, can prepare her own meals, vacuum, sweep, clean, do laundry, drive, shop in stores, can handle her own money, reads and does crafts as hobbies, regularly spends time with others, only has problems getting along with others in that they make her feel anxious, can walk for hours, that her ability to pay attention depends [sic], and that she follows instructions well.

(AR 25.) The ALJ found that these activities are inconsistent with the scope of Ms. Andrew's claimed problems and "all demonstrate that [she] would be capable of activities within the [RFC]." (*Id.*) The ALJ's decision is supported by substantial evidence in the record. In reaching this conclusion, the Court is in no way minimizing or discounting the severity of Ms. Andrew's anxiety disorder and its impact on her life, which the Court witnessed first-hand at the hearing. However, the Court is bound by the pertinent standard of review and is not in a position to reweigh the evidence or second-guess the ALJ's factual findings.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Petitioner's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 28th day of June, 2019.

BY THE COURT:

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge